UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY JENKINS                                        CIVIL ACTION

VERSUS                                              NO.  06-6355

ARIES MARINE CORPORATION,                           SECTION  "N"  (3)
ET AL.

## ORDER AND REASONS

Before the Court is the **Joint Motion for Summary Judgment on Behalf of Aries Marine**

**Corporation and Noble Drilling (U.S.) Inc. (Rec. Doc. 58)**.  After hearing oral argument on April

9, 2008 and reviewing the memoranda of the parties and the applicable law, this Court now rules as

follows.

## I.      BACKGROUND

Applied Drilling Technologies, Inc. ("ADTI") was involved in drilling operations on board

the M/V Lorris Bouzigard, a semi-submersible vessel, owned by Noble Drilling (U.S.) Inc.

("Noble"), pursuant to the terms of a "Domestic Daywork Drilling Contract Offshore

Semi-submersible" ("Noble/ADTI drilling contract"), which was originally entered into by Noble

and Mariner Energy, Inc. ("Mariner").  (Exhibit N to Rec. Doc. 57). In that contract, ADTI assumed

all of Mariner's rights and obligations. Under the Noble/ADTI drilling contract, ADTI agreed to

defend and indemnify Noble against claims by ADTI's "invitees" (i.e., original Plaintiff, Troy

Jenkins ("Jenkins")).

As a part of its drilling operations, ADTI time-chartered certain vessels owned by Aries Marine Corporation ("Aries") to service and supply the M/V Lorris Bouzigard, including the M/V Ram Challenger and the M/V Shelby C. Both of these vessels were chartered pursuant to the terms of a Master Charter Agreement executed between Aries and ADTI ("Aries/ADTI contract").  (Exhibit E to Rec. Doc. 58). Under the Aries/ADTI contract, Aries agreed to indemnify ADTI against any claim/demand by ADTI's contractor or subcontractor (i.e., Noble ). Pursuant to the Aries/ADTI contract, Aries and ADTI entered into Short Form Charter Agreements for the M/V Ram Challenger and the M/V Shelby C.  ("Short Form Charter Agreements").  (Exhibits F and G to Rec. Doc. 58, respectively).  Both of those Short Form Charter Agreements required Aries to provide the vessels' crews with four certified riggers.  Jenkins was a certified rigger employed by Royal Eagle Services, LLC ("Royal Eagle").

On or around August 3, 2006, Aries and Royal Eagle entered into a "Vessel Boarding and Utilization Agreement Reciprocal Hold Harmless" ("Aries/Royal Eagle contract"). (Exhibit D to Rec. Doc. 58).   The Aries/Royal Eagle contract states, in pertinent part:

> [ROYAL EAGLE] AGREES TO INDEMNIFY OWNER GROUP[1] AGAINST ANY AND ALL CLAIMS FOR ILLNESS, INJURY AND/OR DEATH…THAT MAY BE ASSERTED BY…ANY OF [ROYAL EAGLE'S] EMPLOYEES RESULTING FROM, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENT TO, DIRECTLY OR INDIRECTLY, THE SERVICES; AND WHETHER OR NOT ANY CLAIM SHALL ARISE, IN WHOLE OR IN PART, OR BE CAUSED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OR OTHER FAULT OF ANY PARTY, INCLUDING OWNER GROUP, OR BY ANY LEGAL

---

[1]     "'Owner Group' means [Aries], all of its parents, subsidiaries, affiliates, and their respective customer, invitees, contractors and/or subcontractors, at any tier (except Contractor Group), the owners, operators and charterers of the Vessels and all of their directors, officers, insurers, underwriters and the Vessels."  (Exhibit D to Rec. Doc. 58, Section I(g)).

> THEORY, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY, ASSIGNED TO OWNER GROUP, OR BY THE UNSEAWORTHINESS OF ANY VESSEL. [ROYAL EAGLE] FURTHER AGREES TO INDEMNIFY OWNER GROUP AGAINST ANY AND ALL CLAIMS BY OWNER GROUP'S CUSTOMER FOR CONTRACTUAL INDEMNITY OBLIGATIONS ARISING OUT OF OR RELATED TO ANY AND ALL CLAIMS DESCRIBED IN THE PRECEDING SENTENCE OF THIS SECTION II.B. [ROYAL EAGLE'S] OBLIGATION TO INDEMNIFY OWNER GROUP SHALL EXTEND TO ANY REASONABLE ATTORNEY FEES AND LEGAL EXPENSES RELATING TO THE CLAIM, AND INCLUDES ANY REASONABLE ATTORNEY FEES OR LEGAL EXPENSES RELATED TO SUCCESSFULLY ENFORCING THE PROVISIONS OF THE AGREEMENT.

(Exhibit D to Rec. Doc. 58, Section II (b)).

On August 14, 2006, Jenkins was assigned to the M/V Ram Challenger's crew as a rigger. During his time on the M/V Ram Challenger, Jenkins' job consisted of offloading materials and supplies from the deck of the M/V Ram Challenger onto the M/V Lorris Bouzigard. Jenkins slept and ate aboard the M/V Ram Challenger. Once the M/V Ram Challenger was completely offloaded and returned to the port, on August, 19, 2006, Jenkins was assigned to the M/V Shelby C. This was the day the alleged incident occurred. On that day, Jenkins was in the process of performing his rigging duties; i.e., offloading materials and supplies from the deck of the M/V Shelby C onto the M/V Lorris Bouzigard. Jenkins claims he was struck in the head twice by the M/V Lorris Bouzigard's crane's sling hook.

Jenkins filed suit against Aries and Noble. Pursuant to Section II(b) of the Aries /Royal Eagle contract, Aries made formal demand on Royal Eagle for defense and indemnity with respect to Jenkins' claim against Aries. (Exhibit D to Rec. Doc. 58). In addition, pursuant to Section 904 of the Noble/ADTI drilling contract, Noble made formal demand on ADTI for defense and indemnity with respect to Jenkins' claim against Noble. (Exhibit N to Rec. Doc. 58). ADTI accepted

Noble's defense because of the clear language of the Noble/ADTI drilling contract. Thereafter, ADTI made formal demand on Aries for defense and indemnity with respect to Noble's demand for contractual indemnity, pursuant to Section 14(A) of the Aries/ADTI contract. (Exhibit E to Rec. Doc. 58). Aries accepted ADTI's defense. Then, Aries made another formal demand against Royal Eagle for defense and indemnity against ADTI's demand for contractual indemnity, pursuant to the Aries/Royal Eagle contract. (Exhibit D to Rec. Doc. 58). However, Royal Eagle refused to defend and indemnify Aries with respect to both claims/demands.

Thus, Aries filed a Third-Party Complaint against Royal Eagle, seeking defense and indemnity with respect to: (1) Jenkins' claim against Aries; and (2) ADTI's demand against Aries. Aries also filed a Third-Party Complaint against XL Specialty Insurance Company ("XL"), Royal Eagle's insurer, under a "Marine Comprehensive General Liability Policy" ("XL Policy"). (Exhibit M to Rec Doc. 58). The "Owner Group" is an insured under the XL Policy.

Now, Aries and Noble move for a summary judgment in two respects:

(1) Aries and Noble move for summary judgment against Royal Eagle, claiming that Royal Eagle owes Aries defense and indemnity against all claims/demands made against Aries and Noble stemming from the accident at issue, pursuant to certain indemnity provisions made part of the Aries/Royal Eagle contract. Essentially, Aries and Noble claim the indemnity provisions are fully enforceable because the Aries/Royal Eagle contract is a maritime contract [thus, LOIA is not applicable], and because Jenkins was, at all relevant times, a seaman with respect to his employer, Royal Eagle [thus, the Longshore Harbor Workers' Compensation Act ("LHWCA"), §905(b) is not applicable].

(2) "In addition to or in the alternative," Aries and Noble move for summary judgment against XL, finding that Aries and its customer, ADTI, are additional insureds under the XL policy, and that such policy provides coverage against the claims/demands made in this litigation.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 (citing *Celotex*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249;

5

*Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir.2005) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005)).

**B.**     **Analysis**

There are two[2] main issues before the Court: First: was Jenkins a seaman or a longshoreman? Second: Were Aries and ADTI additional insureds under the XL policy?  Because the second issue is presented as an alternative to the first issue, the Court does not reach the second issue based on its conclusion as to the first.

        1.     Seaman Status

Aries and Noble assert that Jenkins was a seaman.  They claim that Royal Eagle's reliance on the LHWCA is misplaced because Jenkins was not a longshoreman.

To establish seaman status under the Jones Act, a plaintiff has to show he: 1) had a connection to a vessel or fleet of vessels that is substantial in terms of both duration and nature; and 2) his duties contributed to the function, mission, operation, or welfare of the vessel. *Lockhardt v. Applied Coating Services, Inc.*, 2005 WL 1574208, * 2 (E.D. La. June 24, 2005) (citing *Becker v.*

---

[2]     In their motion, Aries and Noble anticipate a third issue.  Specifically, they anticipate that Royal Eagle and XL will argue that that the Louisiana Oilfield Indemnity Act ("LOIA") applies in this situation, which would, in essence, nullify the indemnity agreements in this matter.  However, Royal Eagle and XL confirmed during oral argument on April 9, 2008 that they are not making the argument that LOIA applies.  Indeed, the Court agrees that the Aries/Royal Eagle contract is clearly a maritime contract in light of its nature (i.e., it provides riggers to serve as crew members aboard Aries' vessels).

*Tidewater, Inc.*, 335 F.3d 376 (5th Cir.2003)).  A fleet of vessels is "an identifiable group of vessels that is acting together or under one control." *New v. Assoc. Painting Servs., Inc.*, 863 F.2d 1205, 1208 (5th Cir.1989).  A "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 371, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)).

First, it is clear to the Court that Jenkins' work as a rigger contributed to the accomplishment of the M/V Shelby C's mission, which was to offload certain materials onto the M/V Lorris Bouzigard. Jenkins testified that the Aries vessels to which he was assigned during and leading up to his accident could not have accomplished their mission without him or the other riggers. (Exhibit H to Rec. Doc. 58, pp. 58-59).  As a rigger on the M/V Shelby C, the M/V Ram Challenger, and the other vessels to which Jenkins was assigned during his employment with Royal Eagle, Jenkins testified that he performed other tasks besides rigging, such as chipping, painting, and cleaning the vessels, which are tasks associated with being a crew member, and tasks that contribute ultimately to the vessels' mission. (Exhibit H to Rec. Doc. 58, pp.34-35).  Further, Jenkins testified that he ate and slept on the vessels to which he was assigned, including the M/V Shelby C. (See Exhibit H to Rec. Doc. 58, p. 26).

Next, as for the requirement that Jenkins have a connection to a vessel or fleet of vessels that is substantial in terms of both duration and nature, the affidavit of Kim Riggins, Royal's Payroll/Operations Assistant, indicates that Jenkins worked for Royal a total of 231 days (from the time he was hired to the time he was injured).  (Exhibit 1 ro Rec. Doc. 61).  Jenkins spent only 31 days (or 13%) of his time working land-based jobs.  The remaining 200 days (87%) were spent on vessels on navigable waters, while subject to the perils of the sea.  Moreover, the Riggins affidavit

7

reveals that of the 231 days, 140.5 (61%) of those were spent on 4 vessels that were under common ownership or control of Tidewater Marine.  Jenkins slept, ate, and performed ministerial duties on board these Tidewater vessels. Royal Eagle argues that this does not satisfy the 30 percent threshold because those vessels were not owned or controlled by it, as Jenkins' employer.

Royal Eagle and XL argue that based on the Fifth Circuit decision of *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001), this Court should find that the employer (Royal Eagle) must be the owner of the group of vessels that makes up the 30% threshold.  In *Robert*s, the Fifth Circuit stated, "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his *defendant-employer*'s common ownership or control."  266 F.3d at 377.

The plaintiff in *Roberts* spent 58.99% of his time working on fixed platforms or land with no vessel involvement. The remaining time was spent as follows: 13.54% on fixed platforms with third-party vessels alongside; 24.88% on fixed platforms with Cardinal (his employer) vessels alongside; 1.99% of his time in transit on Cardinal vessels; and .9% of his time actually working on a particular Cardinal vessel.  To get to the 30% threshold the plaintiff asked the court to combine the 24.88% of time he spent working on fixed platforms with Cardinal vessels alongside and the 13.54% of time he spent working on fixed platforms with third-party vessels (which were under different ownership and control) alongside. In other words, the plaintiff in *Roberts* erroneously argued that the Cardinal vessels and various other third-party vessels (which were owned and controlled by different entities) combined to constitute a "fleet." The Fifth Circuit rejected that argument. It was in that context that the Fifth Circuit stated that a marine employee must show that he spent 30% of his time on vessels, "every one of which was under his defendant-employer's

common ownership or control," i.e., meaning in that context, that the 30% could not be a combination of employer controlled and other third party vessels. Thus, for an employee who works on multiple vessels, it must be shown that 30% or more of his time was spent on vessels under ownership or control of ONE common entity.

This Court finds that the *Roberts* decision did not overrule nor did it have any effect on *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993) or *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir.1983), with respect to long-standing Fifth Circuit jurisprudence holding that "the employer need not be the owner or operator of the group of vessels." Seemingly, if the Fifth Circuit intended to overrule its own longstanding jurisprudence in the *Roberts* decision, as argued by  Royal Eagle and XL, it would likely have explicitly explained its decision to do so in that opinion.  Also, it should be noted that at least one other district court decision has determined, post-*Roberts,* that the employer need not be the owner or operator of the group of vessels.  See *Parker v. Jackup Boat Service*, LLC, 2008 WL 474215, * 6 (E.D.La. Feb. 14, 2008).

Considering the foregoing, in this case, Jenkins clearly reaches the 30% threshold for seaman status as he was assigned for 61% of his employment with Royal Eagle working aboard vessels owned by Tidewater.  For the reasons stated herein, this Court specifically finds that Royal Eagle, as Jenkins' employer, does not have to be the owner or operator of the group of vessels on which Jenkins spent at least about 30 percent of his time while employed by Royal Eagle.  Instead, the vessels constituting the 30 percent threshold must only be owned by a common entity, which in this case, is Tidewater.  Thus, Jenkins was a Jones Act seaman as to his employer, Royal Eagle.

Accordingly, because the Court finds Jenkins was a seaman, §905(b) of the LHWCA is not applicable and does not serve to render the indemnity agreement between Aries and Royal Eagle

void. Accordingly, the indemnity agreement is enforceable, making Royal Eagle obligated to indemnify the claims made against Aries by Jenkins (pursuant to the Aries/Royal Eagle contract - see Exhibit D to Rec. Doc. 58), as well as the contractual indemnity claims made against ADTI by Noble (pursuant to the Noble/ADTI drilling contract - see Exhibit N to Rec. Doc. 58), and by ADTI against Aries (pursuant to the Aries/ADTI contract - see Exhibit E to Rec. Doc. 58).

        2.     Additional Insured Status

As an alternative argument, Aries and Noble assert that Aries and ADTI are entitled to coverage under the XL Policy because they are additional insureds.  However, because the Court has determined that Jenkins was a seaman, and the applicable indemnity agreements are enforceable, it is unnecessary to consider this alternative issue.

## III.   CONCLUSION

**IT IS ORDERED** that the **Joint Motion for Summary Judgment on Behalf of Aries Marine Corporation and Noble Drilling (U.S.) Inc. (Rec. Doc. 58**) is GRANTED to the extent that the indemnity agreement between Aries and Royal Eagle is enforceable, making Royal obligated to indemnify the claims made against Aries by Jenkins (pursuant to the Aries/Royal Eagle contract - see Exhibit D to Rec. Doc. 58), as well as the contractual indemnity claims made against ADTI by Noble (pursuant to the Noble/ADTI drilling contract - see Exhibit N to Rec. Doc. 58), and by ADTI against Aries (pursuant to the Aries/ADTI contract - see Exhibit E to Rec. Doc. 58).

New Orleans, Louisiana, this 30th day of April, 2008.

**KURT D. ENGELHARDT**
**United States District Judge**

10