UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY JENKINS | CIVIL ACTION |
| VERSUS | NO. 06-6355 |
| ARIES MARINE CORPORATION, ET AL. | SECTION "N" (3) |

## ORDER and REASONS

Before the Court is the Motion for Summary Judgment (Rec. Doc. 141) filed by third-party Defendant Royal Eagle Services, Ltd. ("Royal Eagle"). In it, Royal Eagle argues that under binding Fifth Circuit precedent, Plaintiff Troy Jenkins is not a seaman within the meaning of the Jones Act. In the alternative, Royal Eagle argues that Jenkins withheld material information concerning injuries he sustained prior to his employment with Royal Eagle, and thus is precluded from recovering maintenance and cure. The motion is opposed by Jenkins and also by Defendants Aries Marine Corporation ("Aries") and Noble Drilling (US), Inc. ("Noble"). After reviewing the pleadings, memoranda and exhibits, and the applicable law, the Court rules as contained herein.

### I. BACKGROUND

The factual background of this case was discussed extensively in this Court's ruling on the earlier summary judgment motion, so the Court will not reprise the full record here. *See* Order of April 30, 2008 (Rec. Doc. 101) (hereinafter "Order"). For present purposes, it is enough for the Court to note that on August 19, 2006, Jenkins was a rigger employed by Royal Eagle, a marine services company, and working on the M/V SHELBY C, which was owned and/or operated by

Aries. Jenkins was offloading pipe from the rear deck of the M/V SHELBY C onto the M/V LORRIS BOUZIGARD, a semi-submersible vessel owned by Noble. While so engaged, Jenkins was struck twice in the head by the sling hook of a crane. This accident allegedly caused him severe physical and mental injuries.

On September 22, 2006, Jenkins filed the instant suit against Aries and Noble for unseaworthiness of both vessels and negligence, stating claims under the Jones Act for lost wages, expenses, pain and suffering, loss of enjoyment of life, maintenance and cure, and other damages. *See* Compl. at ¶XI (Rec. Doc. 1). On January 8, 2007, Aries filed a third party complaint against Royal Eagle claiming that under the terms of the contract between the two corporations, Royal Eagle owed Aries and Noble defense and indemnity. *See* 3d Party Compl. (Rec. Doc. 7). The Court granted Aries and Noble's motion for summary judgment on the indemnity issue in April, and in doing so determined that Jenkins was a seaman within the meaning of the Jones Act. *See* Order, at *6-9.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists

in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Jenkins' Seaman Status**

In its motion, Royal Eagle argues that Jenkins is not a seaman and thus it cannot owe indemnity to Aries and Noble. This Court previously ruled that Jenkins was a seaman within the meaning of the Jones Act. *See* Order, at *6-9. In so ruling, this Court rejected Royal Eagle's argument that *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001) overruled longstanding Fifth Circuit precedent, embodied in *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993) and *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir.1983), that a plaintiff's "employer need not be the owner or operator of the group of vessels" for that plaintiff to be a seaman within the meaning of the Jones Act. Order, at *8-9.[1] Now, Royal Eagle presses the

---

[1] Royal Eagle pressed that argument because if Jenkins were not a seaman, not the Jones Act but the Longshore Harbor Workers' Compensation Act would apply to the case. Under the terms of that act, the indemnity agreement between Aries and Royal Eagle would be invalid.

same argument, relying on an unpublished opinion issued several weeks after this Court's ruling on the earlier summary judgment motion. *See Willis v. Fugro Chance, Inc.*, 2008 WL 2131030 (May 21, 2008 5th Cir.) (unpublished). Royal Eagle identifies no new evidence that suggests a different outcome is appropriate; it argues simply that this new opinion confirms its earlier argument, that *Coats* and *Bertrand* have been overruled and that a plaintiff cannot be a seaman within the meaning of the Jones Act if his employer does not own or operate the boats on which he performed the requisite portion of his duties. For the same reasons this Court identified in its earlier ruling, it rejects this renewed argument. As this Court noted in April (and as remains true today): "Seemingly, if the Fifth Circuit intended to overrule its own longstanding jurisprudence in the *Roberts* decision, as argued by Royal Eagle . . . it would likely have explicitly explained its decision to do so in that opinion." Order, at *9. Accordingly, the Court (again) holds that Jenkins is a seaman within the meaning of the Jones Act.

## C. Royal Eagle's *McCorpen* Defense

Royal Eagle also argues that Jenkins is not entitled to maintenance and cure because he intentionally withheld material information about prior injuries to his head, neck, and back. A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). An employer is allowed to rely on certain legal defenses to deny these claims. *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968). One such defense is that the injured seaman willfully concealed from his employer a preexisting medical condition. *Id.* In order to establish a *McCorpen* defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld

information and the injury complained of in the lawsuit. *Id.* at 548-49. The Court analyzes each of these requirements in turn.

### i. Intentional Concealment

The intentional concealment prong of the *McCorpen* test does not require a finding of subjective intent. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005). The Fifth Circuit continued:

> Rather, it refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

*Id.* (citing *Vitcovich v. Ocean Rover O.N.*, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997) (unpublished)). In this case, Jenkins clearly withheld requested medical information when he was hired by Royal Eagle. Specifically, Jenkins failed to report that in 1992 he was involved in an automobile accident where another car rear-ended the van that he was driving. He suffered whiplash injuries to his neck, *see* Mot. Summ. Jmt. at Ex. C (Jenkins deposition, pp. 12-15), and saw a physical therapist for several months, *id.* (p. 24). More seriously, in August 1998 he was injured when he fell 28 feet from a boiler he was working on to the ground below, striking an I-beam along the way. *Id.* (pp.17-18). He was treated on an in-patient basis at Lakewood Hospital for seven days, *id.* (pp. 18-19), spent three or four months recuperating at home, and did not return to full-time employment as a rigger for a year, *id.* (pp. 23-25). It is undisputed that Jenkins did not report either of these accidents or the treatment pursuant to them in his initial employment application to Royal Eagle or in a follow-up medical history questionnaire, despite specific requests for information concerning past head, neck, and back injuries, hospital stays, and related courses of treatment. *Id.*

(pp. 38-52). Thus, the Court concludes that the intentional concealment prong of the *McCorpen* test has been met.

### ii. Materiality

The second element of the *McCorpen* test, materiality, is also met. "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. The argument Jenkins advanced during his deposition to explain his failure to report the prior accidents—that at the time he applied for employment he was suffering no illness or debilitating condition—is irrelevant. *See* Mot. Summ. Jmt. at Ex. C (p. 47, ll. 16-18; p. 51, ll. 14-16). As at least a part of its hiring decision, Royal Eagle requested information on past head, neck, and back injuries, and such a request is rationally related to determining whether a potential rigger has the physical capacity to perform the job. Royal Eagle has established that Jenkins' misrepresentation was material to its hiring decision.

### iii. Causality

Finally, the Court comes to the third element of the *McCorpen* defense, whether there is a connection between the withheld information and the injury complained of in the lawsuit. "[E]ven an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." *Brown*, 410 F.3d at 175 (quoting *Howard v. A.S.W. Well Serv. Inc.*, 1991 WL 365060, at *2 (W.D. La. 1991)). To find the requisite "connection," courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body. *See, e.g.,*

*Olympic Marine Co. v. Credeur*, 1992 WL 345322, at *3 (E.D. La. 1992) (causality not established when prior and present injury not "identical or similar"); *Weatherford v. Nabors Offshore Corp.*, 2004 WL 414948, at *3 (E.D. La. 2004) (causality established when both injuries caused "sharp, stabbing pain" in lower back); *Fox v. Plaquemines Parish Gov't*, 1999 WL 1243065, at *3 (E.D. La. 1999) (causality established when both injuries were to L5-S1 disc); *Guillory v. Northbank Towing Corp.*, 1993 WL 721991, at *3 (W.D. La. 1993) (causality established when both injuries were to L4-L5 discs); *Keys v. Halliburton Co.*, 1989 WL 54224, at *3 (E.D. La. 1989) (causality established when both injuries caused pain in lower back).

The Court concludes that there is a genuine material fact issue as to causality in the instant case, because a reasonable factfinder could conclude that Jenkins' earlier injuries are not identical or substantially similar. Jenkins denied that he sustained any head injury at all in the van accident, *see* Mot. Summ. Jmt. at Ex. C (p. 13, ll. 5-11), and no evidence has been presented that suggests otherwise. A reasonable factfinder could obviously conclude that there is a connection between the head injury complained of in the instant case and a 28-foot fall where it cannot be disputed (due to the abrasions on the top of Jenkins' head) that Plaintiff's head hit the ground at the end of the fall. Further, at his deposition Jenkins himself agreed with the characterization of at least one of his injuries resulting from the fall as a head injury, *see id.* (p. 40, ll. 9-12), a statement with which Jenkins can obviously be confronted at trial. But even counsel for Defendant twice characterized that injury as a "scrape[]." *Id.* (p. 22, ll. 7-8; p. 40, l. 3). At Jenkins' deposition, there was extensive testimony concerning the circumstances of his 1998 fall, with Jenkins testifying that striking the I-beam broke his fall and that his back bore the brunt of the impact. *Id.* (pp. 21-22). While he admits to back injuries, he minimized the force of the impact to his head, suggesting that his head merely

"brushed" the ground, causing minor scrapes. *Id.* (p. 21, ll. 17-20, p. 22, ll. 3-9). The medical evidence presented tends to confirm that in 1998, Jenkins' doctors were not concerned about possible head injuries. Among the tests that were ordered by his doctors were CT scans and x-rays of his back, pelvis, spine, and wrist, as well as a bone scan for possible rib injuries, *id.* (p. 22, ll. 10-19), but there is no evidence presented of testing done specifically to diagnose or treat head injuries. Given that Jenkins' complaint prays relief for head injuries, *not* back or neck injuries, *see* Compl. at ¶VII (Rec. Doc. 1), this Court cannot say, without factual dispute and as a matter of law, that there is a connection between an allegedly minor head scrape and injuries sustained by being struck twice in the head by a crane sling hook.[2]

### III. CONCLUSION

This Court finds no change in Fifth Circuit precedent that justifies reconsideration of its earlier ruling on Jenkins' seaman status. Additionally, the Court finds that while a reasonable jury might agree that Jenkins intentionally withheld material information about prior injuries that was connected to his alleged present injuries, Royal Eagle has not established this fact as a matter of law. Accordingly, **IT IS ORDERED** the instant motion must be and hereby is **DENIED**.

New Orleans, Louisiana, this 9th day of December 2008.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

---

[2] That being said, Jenkins will be bound by his complaint, and the Court will not admit evidence of neck injuries or permit recovery for any such alleged injury.